IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

SENORA SMITH                                                                        PLAINTIFF

VS.                                                          CIVIL ACTION NO.  3:17cv598-HTW-FKB

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                     DEFENDANT

## REPORT AND RECOMMENDATIONS

### I. Introduction

The Social Security Administration (SSA) previously determined that Senora Smith was disabled as of July 3, 2000.  She was awarded supplemental security income (SSI) payments under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3) and disability insurance benefits (DIB) under Title II, 42 U.S.C. § 423(d)(1)(A). After a routine periodic review of Smith's medical records, the SSA determined that medical improvement had occurred and that she was no longer disabled as of May 31, 2014.[1]  A disability hearing officer affirmed the finding. Smith requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held on September 21, 2016.  Thereafter, the ALJ issued a decision affirming the cessation of benefits.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Smith now brings this appeal pursuant to 42 U.S. § 405(g).

.

---

[1] Pursuant to 20 C.F.R. § 404.1594(a), a claimant's continued entitlement to disability benefits is to be reviewed periodically.

**II. Facts and Evidence**

Plaintiff was born on November 6, 1964, and was 51 years of age at the time of her hearing before the ALJ. In 2000, she sustained a work injury to her back, and she has not worked since. Plaintiff underwent a lumbar fusion at L5-S1 for low back pain in 2002. R. 305.[2] Her pain did not improve after the surgery, and at least one physician believed that her fusion graft had failed. R. 334. On March 29, 2006, the Commissioner determined that she was disabled as of July 3, 2000, due to due to back pain and failed back surgery. R. 53. She was awarded SSI and DIB benefits.

Evidence subsequent to the 2006 disability finding established that the fusion graft had been successful. A CT in 2010 revealed a fusion with no evidence of hardware loosening or fracture. R. 505. However, there was evidence that the pedicle screws extended slightly through the cortex. *Id.* The CT also showed a minor bulging of the disc at L4-L5 but no canal or foraminal compromise. *Id.* An x-ray report in January of 2015 noted that the alignment of the lumbar vertebrae appeared normal. *Id.* at 404. There was narrowing of the disc space and facet arthropathy at L5-S1, but there was no vertebral body compression, no significant arthritic changes, and no acute abnormality. *Id.*

Plaintiff continued to complain of low back pain and bilateral leg pain. In October of 2013 at an exam at the Jackson Hinds Comprehensive Health Center (JHCHC), she had a full range of motion. R. 373. In May of 2014, she was given a Toradol injection for low back pain. R. 372. She continued to have a full range of motion. R. 371.

---

[2] Citations are to the original pagination of the administrative record.

Plaintiff began treatment at the University of Mississippi Medical Center in October of 2015. She reported chronic back pain, neuropathy, and weakness. Neurological exam was normal. She was diagnosed with sciatica, referred for physical therapy, and prescribed Neurontin. At an examination at a pain management clinic in November of 2015, she was noted to have positive straight leg raises bilaterally and tenderness on palpation of the lumbar spinous processes. R. 494. She ambulated without assistance. *Id.* Also in November of 2015, Plaintiff was referred to the Jackson Neurosurgery Clinic for evaluation. Upon physical exam, she had normal lower extremity strength, and her gait was normal. R. 503. She had tenderness of sacroiliac joint, the sciatic notch, and the lumbar spine at L4, L5, and S1. *Id.* Diagnosis was sacroiliitis. *Id.*

Throughout 2013 and the first half of 2014, Plaintiff was treated by Dr. Joseph Kwentus at Hinds Behavioral Health Services for major depression and alcohol dependence. Dr. Kwentus prescribed Vistaril, Celexa, doxepin, and Campral. R. 345-49, 399. Treatment notes indicate that Plaintiff generally did well and had no major problems. *Id.* She sought treatment again in October of 2015 and was diagnosed by Dr. Gupta with major depressive disorder, anxiety disorder, and dysthymia. R. 477. Her treatment consisted of supportive therapy and Vistaril, Celexa, and doxepin. R. 474, 479, 481-82, 484-85. Dr. Gupta's most recent treatment note, dated August 5, 2016, indicates that she was having no major issues. R. 474.

In December of 2014, as part of the periodic review process, Linda Baker, Ph.D., completed a psychiatric review technique form. Dr. Baker rated as mild Plaintiff's

3

restriction of the activities of daily living, difficulties in maintaining social functioning, and problems with concentration, persistence, or pace, and she stated that Plaintiff had experienced no episodes of decompensation. R. 440. Dr. Baker therefore found that Plaintiff's mental impairment was non-severe. R. 430.

      A consultative physical examination was performed by Kenneth Saul, M.D., in January of 2015. Plaintiff reported constant low back pain. R. 406. During the exam, she was able to ambulate, get up and down from a chair, and get on and off the exam table, all without difficulty. R, 408. She had a normal gait, normal range of motion in all extremities, and no scoliosis. R. 408-09. Straight leg raises were positive at 30 degrees bilaterally and were stopped due to back pain. R. 409. Sensation was normal in all extremities, and reflexes were likewise normal. R. 409-10. No abnormalities were found other than subjective back pain. R. 410. Dr. Saul opined that her reported pain appeared to be out of proportion to clinical findings and stated that assessing her functional limitations was difficult, given the limited findings on examination. R. 410. Nevertheless, he stated that she had no limitations in her ability to stand, sit, walk, bend, stoop, reach, handle, lift, carry, see, or hear. *Id.*

      At the hearing, Plaintiff testified that she completed the twelfth grade. R. 544. She worked as a full-service driver for Pepsi until she sustained a back injury in 2000. R. 545, 551. She stated that she continued to be unable to work because of back pain. R. 545-46. Plaintiff estimated that she averages only two or three days a week in which she has relief from pain. R. 545. Her pain improves with heat, bed rest, and medication. R. 548. She also testified that her leg frequently "goes out." R. 545. She

4

did not mention depression, other than to confirm that she was still seeing Dr. Gupta. R. 548. Her daily activities include getting her two children ready for school, driving them to school, and cooking for them. R. 547. She shops, although she usually uses the scooter when shopping at Wal-Mart. *Id.* Plaintiff estimated that she could lift five or ten pounds but not twenty. R. 547-48.

Also testifying at the hearing was Lisa Allen, a vocational expert (VE). Ms. Allen characterized Smith's past relevant work as a truck driver, a semi-skilled job at the medium exertional level. R. 551. The ALJ posed the following hypothetical to the VE: A person of Plaintiff's age, education, and past work experience, who could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours, occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, kneel, crouch, crawl and stoop; who was limited to simple tasks; and who worked with data and things, rather than with people. *Id.* The VE testified that such a person could not perform Plaintiff's past work but that she could perform the jobs of assembler of small products, bakery racker, and sampler. R. 551-52.

### III. The Decision of the ALJ and Analysis

In evaluating Plaintiff's claim, the ALJ worked through the sequential evaluation process for determining whether a claimant remains disabled.[3] She found that Plaintiff

---

[3] To determine whether a claimant continues to be disabled, the ALJ engages in an eight-step sequential evaluation process for termination of Title II benefits and a seven-step process for termination of Title XVI benefits. The analysis is the same except that the performance of substantial gainful activity, step one in the process for Title II claims, is not used in the Title XVI analysis. The eight-step process considers the following factors:

    (1) Whether the claimant is presently engaging in substantial gainful activity (if so, the disability has ended and the analysis ends);

5

was not engaged in substantial gainful activity and that she did not have an impairment that meets a listing or that is equivalent to a listed impairment. R. 20. She further determined that Plaintiff has experienced medical improvement as of May 31, 2013, and that the improvement has been related to her ability to work because it has resulted in an increase in her residual functional capacity (RFC). R. 22-25. The ALJ found that Plaintiff suffers from the severe impairments of status post lumbar fusion and depression. R. 20. She determined that Plaintiff has the following RFC: She can lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk and sit for six hours in an eight-hour workday, never climb ladders, ropes, or scaffolds, and occasionally balance, kneel, crouch, crawl, and stoop. R. 25. She is limited to simple tasks, and she should work with data and things, not people. *Id.* At the last two steps, the ALJ found, based upon the testimony of the VE, that Plaintiff cannot perform her

---

(2) whether the claimant has an impairment or combination of impairments that meets , or is equivalent to, an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant remains disabled and the analysis ends);

(3) whether medical improvement has occurred; (if not, the claimant remains disabled and the analysis ends);

(4) whether the medical improvement is related to the claimant's ability to work (if not, the analysis proceeds to step five; if so, the analysis proceeds to step 6);

(5) whether an exception to medical improvement applies (if so, the analysis proceeds to the next step; if not, the claimant's benefits cease and the analysis ends);

(6) whether the claimant has a severe impairment or a combination of impairments that is severe (if not, benefits cease and the analysis ends);

(7) whether the claimant can perform past relevant work given his or her current residual functional capacity (RFC) (if so, benefits cease and the analysis ends);

(8) whether the claimant can perform other work (if not, the claimant remains disabled).

*See* 20 C.F.R. § 404.1594(f).

past relevant work but can perform the jobs of assembler of small products, bakery racker, and sampler. R. 26-28. The ALJ therefore determined that the Plaintiff's disability ended on May 31, 2014. R. 28.

This Court's review of a decision of the Commissioner is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Although the burden of proof remains on the claimant, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the [Commissioner] to provide evidence" that the claimant's condition has improved. *Taylor v. Heckler*, 742 F.2d 253, 255 (5th Cir. 1984). In support of her appeal, Plaintiff makes two arguments: That the ALJ erred in failing to find that she meets listing 1.04, and that the ALJ's finding of medical improvement is not supported by substantial evidence.

Listing 1.04, disorders of the spine, contains three subsections. The listing may be met by satisfying any one of the three subsections:

> 1.04. *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in the compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
>    or

7

    B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

    or

    C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04(A)-(C).

       The ALJ determined that Plaintiff did not meet any of the three alternative conditions – nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. R. 20. Plaintiff argues that this determination was erroneous, in that the record contains evidence of nerve root compression and lumbar spinal stenosis. Plaintiff fails, however, to point to any finding in the record that Plaintiff suffers from nerve root compression. Rather, her argument seems to be that Dr. Saul's finding that she did not suffer from this condition is suspect because it was based upon a single x-ray, rather than upon comparative x-rays or an MRI.

       Section A of the listings sets forth the objective medical evidence required for a finding of nerve root compression. Specifically, it requires, *inter alia*, motor loss accompanied by sensory or reflex loss. Dr. Saul's examination revealed no motor loss and no sensory of reflex loss. Neither have any of Plaintiff's other evaluations established these conditions.

       Plaintiff also points out that in 2001, Dr. Capel, Plaintiff's neurosurgeon, noted a moderate degree of foraminal stenosis. R. 316. This notation was made prior to

8

Plaintiff's spinal surgery, and the record contains no further mention of this condition. In any event, the record does not contain evidence of the disabling conditions, such as the inability to ambulate effectively, required in section C of the listing.

In short, the record contains substantial evidence to support the ALJ's finding that Plaintiff does not meet listing 1.04.

Plaintiff also argues that other conditions in addition to those set forth in A, B, or C should have been considered to meet the listing, specifically, facet arthritis and narrowing of space. This argument is without merit. The listing sets out the conditions that are required. There was no error in the ALJ's failure to read other possibilities into the listing. Neither has Plaintiff shown that her conditions of facet arthritis and narrowing at the L5-S1 vertebrae are medically equivalent to those described in the listing.

Plaintiff's final argument is that the ALJ's finding of medical improvement was not supported by substantial evidence. In support of her position, Plaintiff points out several conditions that have been diagnosed since her determination of disability - a narrowing of the L5-S1 disc space, facet arthropathy, sciatica, and depression. As to Plaintiff's back condition, these more recent findings do not change the fact that the medical record supports a finding that Plaintiff's condition is improved compared to the date of the finding of disability. Significantly, at that time, the record contained evidence that the fusion graft had failed, and the ALJ at the hearing relied upon this supposed failure in determining that Plaintiff was disabled. R. 51. More recent studies, however, have established that the fusion was in fact successful. Furthermore, since the finding of

9

disability, there has been no objective finding to explain her complaints of chronic and severe pain. Dr. Saul noted this disparity, and his opinion provides substantial evidence to support the ALJ's findings.

As to Plaintiff's new condition of depression, Plaintiff herself did not testify concerning any problems with depression, and Dr. Gupta's notes indicate that she has generally done well with treatment. The ALJ sufficiently accounted for this condition by limiting her to simple tasks and to work with data and things, rather than people.

### IV. Conclusion

The undersigned concludes that the ALJ's decision was supported by substantial evidence and that no errors of law were made. Therefore, the undersigned recommends that the decision of the Commissioner be affirmed.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 10th day of February, 2020.

s/ F. Keith Ball  
United States Magistrate Judge